July Term, 1881, No. 87. March 29th, 1882.

## Appeal of Daniel Buck *et al.*

A *feme covert*, owning real estate, united in a mortgage with her husband to secure his bond. He subsequently erected, with her consent, machinery on the premises necessary to carry on his trade. The real estate was subsequently levied upon under the mortgage and sold at sheriff's sale. He gave no notice at the sale of any claim to the fixtures. *Held*, that if he could have previously asserted any claim to them, he waived it by thus assenting to the sale.

Before MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ. SHARSWOOD, C. J., absent.

Appeal from the decree of the Court of Common Pleas, No. 2, for *Philadelphia County*, confirming the report of a master.

Bill in equity filed by James T. Kirkpatrick, Jr., and Maderwell Kirkpatrick, trustees, against Daniel Buck, James Buck, and William W. Lee, to restrain the defendants from removing certain machinery bought by them at a sheriff's sale, from an iron foundry, which had been purchased by the complainants upon a sale under a *levari facias* on a mortgage.

After answer filed, the case was referred to T. F. Jenkins, as examiner and master, who reported the facts substantially as follows:

Louisa Weicke was the owner of a three-story brick building and kiln, for burning limestone, and lot of ground, buildings and lot of ground, and also a factory and lot, all on New Market Street, in the city of Philadelphia. She joined with

her husband, Edward Weicke, in a mortgage of these premises to the complainants, to secure a bond of $15,000 of even date, given to them by Edward Weicke. The latter was then in possession, and shortly afterward converted the premises into a boiler manufactory. Machinery necessary for carrying on such a manufactory, consisting of planers, lathes, presses, cutters, etc., were erected by him. The relation of landlord and tenant did not exist between them, but Edward Weicke took possession, with the consent of his wife, for the purpose of establishing the factory, and there was no express agreement between them as to whether or not he had a right to remove the tools and machinery. There was no evidence as to whether or not he intended that these tools and machinery should become and remain attached to the premises as part of the freehold.

A *scire facias* was issued on the mortgage, judgment was obtained thereon, and the premises were sold by the sheriff, January 6th, 1879, under a *levari facias*, to the complainants. At the sheriff's sale, Edward Weicke gave no notice that he, intended to claim the machinery as his personal property, and that it would not pass to the purchaser. A sheriff's deed was delivered to the complainants January 25th, 1879. After the sale, two writs of *fieri facias* were issued upon separate judgments against Edward Weicke, and a levy was made upon the tools and machinery, which were sold thereunder to the defendants, Daniel Buck and James Buck.

The other defendant, Lee, was the deputy sheriff who conducted the sale. The complainants had no knowledge of the levy under the writs of *fieri facias* until after the sale. At the time of the filing of the bill the defendants, Daniel and James Buck, were about to remove the tools and machinery from the premises.

The master found that the articles mentioned were fixtures, which were bound by the mortgage, and passed to the complainants by their purchase of the real estate at the sheriff's sale, and that the preliminary injunction granted in the case should be made perpetual against Daniel Buck and James Buck, and that as to the other defendant, Lee, the bill should be dismissed.

Counsel for defendants filed numerous exceptions to the finding of the master.

June 17th, 1881, it was ordered and decreed that "the bill be dismissed as to W. W. Lee, and that the preliminary injunction, heretofore issued, be made perpetual against Daniel Buck and James Buck," with costs.

The defendants then appealed, assigning as errors the decree as above, and the dismissal of the exceptions.

[Appeal of Daniel Buck *et al.*]

*B. F. Fisher*, for the appellants.

The judgment on the mortgage was *in rem*, and bound only the land. The land belonged to the wife. The inchoate tenancy by the curtesy was no such interest as converted into realty machinery brought on the property by Weicke for his separate business: Estate of Benjamin Hinds, 5 Whar., 138.

It is absolutely established that it was not the intention of either the husband or wife that the machinery should become part of the realty. The intention to annex is the legal criterion: Hill *v.* Sewald, 3 P. F. Smith, 271; Seeger *v.* Pettit, 27 P. F. Smith, 437; Meigs's Appeal, 12 P. F. Smith, 28; Lemar *v.* Miles, 4 Watts, 330.

To hold that because Weicke did not remove the fixtures during the term, he and the purchaser, under the *fieri facias*, lost the right to remove them, would be a great hardship.

The owner had, under the law, three full months, after the making of the deed and notice, in which to remove. No notice to quit was ever given. The term did not end until the right to possession ceased: Smith on Landlord and Tenant, 263; Mackintosh *v.* Trotter, 3 M. & W., 184; Weeton *v.* Woodcock, 7 M. & W., 14; Davis *v.* Moss, 2 Wright, 346; Hill *v.* Sewald, 3 P. F. Smith, 271.

*John L. Kinsey*, for the appellees.

The machinery formed part of the realty, and passed by the sale under the mortgage: Voorhis *v.* Freeman, 2 W. & S., 116; Pyle *v.* Pennock, 2 W. & S., 391; Gray *v.* Holdship, 17 S. & R., 413; Heaton *v.* Findlay, 2 Jones, 304; Harlan *v.* Harlan, 3 Harris, 507; Roberts *v.* Bank, 7 Harris, 71; Climie *v.* Wood, L. R., 3 Exc., 257; Christian *v.* Dripps, 4 Casey, 271; Ege *v.* Kille, 3 Norris, 333; Morris's Appeal, 7 Norris, 368.

Admitting the tenancy, the tenant was bound to remove the fixtures during the term. The term ended with the sheriff's sale, caused by his own default: Davis *v.* Moss, 2 Wright, 346; Overton *v.* Williston, 7 Casey, 155; White *v.* Arndt, 1 Whar., 91.

Fixtures erected by a mortgagor of a less interest than a fee will be bound by the mortgage: Meux *v.* Jacobs, L. R., 7 H. of L. Cases, 481; Railroad Co. *v.* Woelpper, 14 P. F. Smith, 372; Ladley *v.* Creighton, 20 P. F. Smith, 490.

APRIL 10TH, 1882.—PER CURIAM: This contention cannot be decided by affirming the right of a tenant to remove, during his term, fixtures which he has erected for the purpose of carrying on his trade.

[Carey *v.* Sheldon *et al.*]

The facts go much further, and require the application of other principles of law. The fixtures in question were erected by one of the mortgagors. It matters not that the title to the land was in his wife. He joined in the execution of the bond, the payment of which the mortgage was given to secure, and he united with her in the mortgage. *Scire facias* issued on the mortgage, and judgment thereon was duly recovered. By virtue of execution therefor, the appellees purchased the land with the fixtures then on it, and received the sheriff's deed. No notice was given at the sheriff's sale of any claim that the fixtures were not bound by the mortgage, or that the purchaser at that sale would not acquire title to them. No rights of the appellants had then attached. Their judgment was obtained afterwards. If Weicke could have previously asserted any claim to the fixtures against the mortgage, he waived all such by thus assenting to the sale.

Decree affirmed and appeal dismissed at the costs of the appellant.